**PYTHAGORAS GENERAL CONTRACTING CORP., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, and Hilda Solis, United States Secretary of Labor, Defendants.**

**No. 11 Civ. 2775(DAB).**

United States District Court, S.D. New York.

Feb. 20, 2013.

goulis, Georgoulis & Associates PLLC, New York, NY, for Plaintiff.

Bertrand Rolf Madsen, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

DEBORAH A. BATTS, District Judge.

This action arises from the allegation that Defendants, United States Department of Labor ("USDOL") and Hilda Solis ("Solis"), United States Secretary of Labor, through the Administrative Review Board[1] ("ARB") acted unlawfully under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Plaintiff, Pythagoras General Contracting Corp. ("Plaintiff" or "Pythagoras"), alleges that the ARB's Final Decision and Order, which vacated Administrative Law Judge ("ALJ") Thomas Burke's ("Burke") awards to eight Pythagoras employees, was unlawful under 5 U.S.C. § 706(2)(A)-(E), and consequently denied Pythagoras Procedural Due Process as guaranteed by the Fifth Amendment to the United States Constitution.

This matter is now before the Court on Defendants' Motion for Summary Judgment and on Plaintiff's Cross–Motion for Summary Judgment, both pursuant to Fed.R.Civ.P. 56(d). For the reasons that follow, Defendant's Motion is GRANTED, Plaintiff's Motion is DENIED, and the Complaint is DISMISSED.

## I. BACKGROUND

Joyce J. Sun, New York City Housing Authority Law Department, Chris Geor-

The following facts are undisputed.[2] The parties' familiarity with the facts is

---

1. Pursuant to 29 C.F.R. § 7.1(d), "the matters within the scope of its jurisdiction the Board shall act as the authorized representative of the Secretary of Labor."

2. Defendants do not, contrary to Local Civil Rule 56.1 and this Court's Individual Practices, submit a 56.1 Statement. Instead, Defendants submit the entire administrative rec-

assumed, and the facts are laid out here only as needed for resolution of the Motions currently before the Court.

In June 2000, Pythagoras entered into a public improvement contract, identified as Contract No. DC9800015, with the New York City Housing Authority ("NY-CHA") for renovation work on the Vladeck Houses, a residential public housing development in Manhattan. (Admin. R. 745–746, 2075, 4109–4112.) The project received federal funding, and thus was subject to the Davis–Bacon Act ("DBA"), the Davis–Bacon labor standards provisions of the U.S. Housing Act of 1937, and the Contract Work Hours and Safety Standards Act ("CWHSSA") (collectively referred to as "Davis–Bacon and Related Acts" or "DBRA"). (*Id.* at 2075, 3849–3864, 4109–4110.) The eight employees who are the subject of the instant action-Patrick Richards ("Richards"), Clive Hall ("Hall"), Delroy Green ("Green"), Edward Riley ("Riley"), Fabio Arbelaez ("Arbelaez"), Philbert Franklin ("Franklin"), Raymond Jesse Garcia ("Garcia"), and Jude Merzy ("Merzy")-worked for Pythagoras on the Vladeck Houses Project. (*Id.* at 207–233, 338, 569, 1999–2000.)

In November 2002, the USDOL began investigating Pythagoras after Pythagoras' employees complained that they were not being paid for overtime work. (*Id.* at 744, 2094.) Investigator Peter Zhu ("Zhu") conducted the investigation on the agency's behalf, and ultimately met with representatives of Pythagoras, interviewed approximately thirty employees, visited the Vladeck Houses site, and reviewed certified payrolls, home payroll records, pay-

ment requisitions, and "Daily Look Aheads," i.e. documents that listed the type of work that Pythagoras anticipated performing on a specified date. (*Id.* at 745, 747, 749–754, 756–774, 777–801, 1112–1113, 2302–3314.) In June of 2003, Zhu informed Pythagoras that the investigation showed that Pythagoras had failed to maintain complete and accurate records of hours worked and that a number of workers had been misclassified and underpaid. (*Id.* at 747–749, 801–802, 2100, 5773–5780.) On October 15, 2004, upon conclusion of the investigation, the Administrator issued a Charging Letter to Pythagoras which alleged that Pythagoras had (1) mis-classified employees, (2) failed to pay prevailing wages, (3) failed to pay wages for all hours worked, (4) submitted certified payroll records containing falsified information, and (5) failed to pay overtime compensation for work in excess of forty hours per week, all of which amounted to violations of the labor standards provision of the DBRA and the CWHSSA. (*Id.* at 1–5.) The Administrator calculated Pythagoras' total underpayment to be $731,343.79, affecting 87 employees, (*id.* at 5), and noted that the violations had been "aggravated and willful[,]" and that Pythagoras would be "barred from doing business with the Government as a contractor" unless it requested a hearing before an ALJ of the US-DOL. (*Id.* at 2–3.) Pythagoras responded in a letter dated November 8, 2004, in which it contested the alleged violations and requested a hearing before an ALJ. (*Id.* at 6–7.) In June 2005, the USDOL filed a Reference and Certificate of Service in the matter, which officially commenced

ord on 2 CDs consisting of over 6,9000 pages, period. Although Plaintiff raises an issue with Defendants' failure to submit a 56.1 Statement, a "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62,

73 (2d Cir.2001). Because the record from ALJ Burke's proceedings are not contested by either party in this matter, the Court accepts the facts as set forth in the administrative record and Plaintiff's Statement of Undisputed Material Facts as such.

the administrative proceedings before the ALJ. (*Id.* at 8–11.)

### A. Proceedings Before the Administrative Law Judge

The case was assigned to Associate Chief ALJ Thomas M. Burke, and it was conducted over the course of about one and one-half years, including an eleven-day hearing between February and June 2007. (*Id.* at 72–73, 153–2157.) At the hearing's conclusion, the parties submitted briefs, and on June 4, 2008, ALJ Burke issued his decision. (*Id.* at 6198–6256, 6257–6401, 6404–6438.) The decision addressed the evidence regarding each of the eight employees at issue in this case [3] (*id.* at 6413–6422), and made the following findings:

(1) Investigator Zhu calculated the amount in back wages owed to *Richards and Hall* by multiplying the prevailing wage for carpenters by the number of days that Richards and Hall had worked on the project, which was taken from the Pythagoras certified payroll sheets, and deducting the amount of wages that Pythagoras had already paid the two employees at the Tier B laborer rate. (*Id.* at 4941–5065, 5460–5465.) Based on Zhu's calculations, Richards and Hall had been underpaid by $116,947.31 and $75,031.63, respectively. (*Id.* at 4950–4952, 5464, 6413, 4942–4943, 5462, 6414, 6721.) The Administrator had met its burden of proving that both Richards and Hall had "performed carpentry work" for which they had not been compensated, and had "shown the amount and extent of this work as a matter of just and reasonable inference." (*Id.* 6414.)

Pythagoras did not dispute the employees' performance of carpentry work, but did dispute the Investigator's determination of back wages owed to them. Pythagoras rebutted the Administrator's back wage calculation by showing that they were only entitled to 118 days of wages for work as carpenters. (Admin.R. 167–168, 4950–4952, 5966, 5968, 6759.) Pythagoras relied on Louisdor testimony that Richards, working with Hall, had been initially hired as a Tier B laborer and had been promised carpentry work only when it was available. (*Id.* at 1998.) Pythagoras also relied on its own document, Exhibit 00, which it prepared as a result of its internal investigation; the document listed Richards and Hall as being owed $5,053.35 in back wages for 118 days of carpentry work. (*Id.* at 2103–2110, 5966, 5968.) ALJ Burke found "sufficient evidence to negate the reasonableness of the inference that Richards spent all of his time performing carpentry work by questioning the accuracy and credibility of his statements," and concluded that Richards and Hall were each entitled to pay for 118 days of carpentry work as listed in Exhibit 00. (*Id.* at 5966, 5968, 6414–6415.)

(2) The Administrator satisfied its burden of demonstrating that the employees *Green, Riley, Arbelaez, and Franklin,* performed work at the mason tender classification for which they had been improperly compensated. (Admin. R. at 6416–6420.) Green had done work assembling and disassembling scaffolding and sidewalk sheds, performing demolition work in bathrooms,

---

**3.** In addition to the findings specific to the eight employees, ALJ Burke's decision found that Pythagoras had "misclassified certain employees and failed to segregate the hours spent performing different jobs," (*id.* at 6413), underpaid employees for overtime compensation due, and failed to pay the "proper prevailing wage rates and fringe benefits," (*id.* at 6438, 6578–6582), ALJ Burke concluded that Pythagoras had violated willfully the DBRA, and barred the company and its president from working on federal contracts for three years. (*Id.* at 6433–6438.) Parties do not appeal these findings and, therefore, they are not before the Court.

and laying and removing plastic sheeting. (*Id.* 207–233.) Riley worked on scaffolding and, in addition, built holes, poured cement, built fences, and laid bricks. (*Id.* at 281–317, 5827–5831.) Arbelaez, likewise, assembled and disassembled scaffolding, and also made cement and cut bricks. (*Id.* at 407–433, 5851–5852.) Franklin performed demolition work in bathrooms, chipped ceilings and broke concrete floors, built scaffolds, and laid plastic sheeting. (*Id.* at 234–256, 5825–5826.) The report notes that these employees were not paid for the mason tender work and, therefore, were owed back wages. (*Id.* at 826, 1046–1058, 1189, 1566, 1625, 1855, 5400–5465.) Under Zhu's blended rate–70% mason tender rate and 30% of the Tier B laborer rate-Green was owed $51,215.37, Riley, $28,237.84, Arbelaez, $44,576.63, and Franklin, $38,347.49. (*Id.* at 5416–5418, 5462; 5429–5431, 5464; 5405–5410, 5462; 5965, 5966, 5968.)

Again relying on Exhibit OO, Pythagoras rebutted the showing by arguing that Green and Riley were only entitled to 45 days of work at the mason tender rate, Arbelaez was owed $3,958.00, and Franklin, $5,832.60. (*Id.* at 5965–5968.) Pythagoras' rebuttal, according to ALJ Burke, showed that the employees had performed less work than what was demonstrated by the Administrator, and that not all work was performed at the mason tender classification. (*Id.* at 6418.) Pythagoras had "presented a precise amount of work performed to rebut the reasonableness of the Administrator's assessment." (*Id.*)

(3) The Administrator established its burden, demonstrating that *Garcia* was not properly compensated for his time spent working as a mason tender. (Admin.R. 6422.) Garcia performed scaffolding work and put up fences every day for "the first three and a half months," in addition to having worked with the demolition in bathrooms, worked on the roof, and worked with bricklayers. (*Id.* at 338–40.) Investigator Zhu's report showed that Garcia was owed back wages from July 20, 2001 to November 2, 2001, and again from September 12, 2003 to October 24, 2004; he calculated the wages owed from that period at a blended rate, but left untouched the remainder of the pay for the time spent on the project. (*Id.* at 5411–5413, 5462.)

Rebuttal evidence offered by Pythagoras based on the information kept in the Periodical Estimates and Daily Look Aheads, however, was sufficient to undermine the claim that Garcia worked on scaffolding. (*Id.* 4125–4748, 5474–5747.) Pythagoras argued that Garcia could not be credited with having performed any scaffolding work because the documents showed no scaffolding work done during the three month period that Garcia claimed to have worked on it. (*Id.* at 6422.) Therefore, ALJ Burke subtracted "the wages from [Garcia's] alleged three months of work on the scaffold from the wages that Investigator Zhu determined were owed . . . ." (*Id.*)

(4) The Administrator showed that *Merzy* performed work both as a mason tender and as a tile-layer, was improperly classified and, therefore, was inadequately compensated for his labor. (Admin. R. at 6420.) Merzy testified that he worked on scaffolding for a period of about seven months, and tiling during the rest of his time, which required him to work on two to four bathrooms a day. (*Id.* at 570–572.) Investigator Zhu concluded that for the seven months during which Merzy worked on scaffolding, he was entitled to a blended wage consisting of pay at 70% mason tender rate and 30% Tier B laborer rate, (*id.* at 5422), and he was owed the tile-layer hourly rate of $46.08 from June 14, 2002 to September 26, 2003. (*Id.* at 5422–5424, 5463.)

Pythagoras rebutted the Administrator's showing, however, because the Daily Look Aheads refuted Merzy's testimony that he worked on scaffolding over a period of seven months as Merzy had testified. (*Id.* at 6421.) Pythagoras presented sufficient evidence "questioning [Merzy's] credibility," which rebutted the Administrator's showing regarding the tile-laying work performed. (*Id.* at 6420.) Louisdor's testimony, which undermined Merzy's claim of having laid tiles in "over 1,300 bathrooms[,]" maintained that Merzy only worked on about ten bathrooms for a total of about five days of work. (*Id.* 6420–6421.) Merzy, therefore, was entitled to pay equivalent to five days worth of work performed as a tile-layer and no back wages for the work performed as a mason tender. (*Id.* 6421.)

In June 2007, during the course of the hearing before the Administrative Law Judge, two Pythagoras managers gave testimony containing statements that were particularly noteworthy. Stanley Petsagourakis ("Petsagourakis"), President of Pythagoras, testified that the company arrived at the numbers by relying on Daily Look Aheads. (*Id.* at 756–758, 2102–2109, 4125–4748, 6406.) Petsagourakis further explained that Pythagoras relied on the information provided by Frank Louisdor ("Louisdor"), the project's general superintendent, regarding the number of hours each employee worked on particular tasks, as well as the periodical estimates, which reflect general budget and billing information. (*Id.* at 1900–1901, 2103–2104, 4749–4756, 5474–5747.) Lousidor also testified, admitting that the Administrator in charge of the case requested Pythagoras' time records for each of the employees, but Pythagoras did not provide these records; the documents were left behind at the site of the project and likely destroyed after the project finished in 2004. (*Id.* at 749, 1112, 1940, 2015–2016.)

## B. The Appeal to the Administrative Review Board

In October 2008, Pythagoras and the Administrator each filed Petitions for Review with the Administrative Review Board, effectively appealing ALJ Burke's Decision and Order. (Admin.R. 6642–6651, 6706–6737, 6749–6782.) Pythagoras' Petition specifically sought review of the issuance of the debarment, as well as the grant of back wages to the employees in excess of what Pythagoras had admitted. (*Id.* at 6636–6641.) The Administrator's Petition, on the other hand, challenged the ALJ's reduction of Investigator Zhu's calculated underpayment to the eight employees, and the subsequent award due to them from Pythagoras. (*Id.* at 6642–6651, 6706–6737, 6749–6782.)

The ARB concluded that the ALJ ruled reasonably on Pythagoras's claims, and thus denied Plaintiff's challenges. (*Id.* at 6845–6855.) The ARB agreed with the Administrator's claim that Pythagoras had failed to rebut the Administrator's showing of the back wages owed to the eight employees in question. (*Id.* at 6855–6865.) Relying on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ("*Mt. Clemens*"), the ARB ruled that the generalized records that Pythagoras used to rebut the Administrator's reasonable showing were insufficient as a matter of law. (*Id.* at 6893.) The ARB concluded that according to *Mt. Clemens*, rebuttal evidence is sufficient only if it "(1) is based on individualized records, and (2) fully accounts for the work hours in question, consistent with the project as a whole." (*Id.* at 6894.) Because the generalized records offered by Pythagoras failed to satisfy the requirements set out in *Mt. Clemens*, the ARB ruled that Pythagoras's evidence could not rebut the Administrator's showing of owed back

wages of all eight employees in question. (*Id.* at 6895–6901.) Accordingly, the ARB increased the rewards of the eight employees by $344,725.83 and the total award to $792,396.19. (*Id.* 6902.)

## II. DISCUSSION

### A. Standard of Review

When reviewing an agency ruling, the legal standard of Federal Rule of Civil Procedure 56 does not apply; instead the "arbitrary and capricious" standard under the Administrative Procedures Act, 5 U.S.C. § 706, applies. *Karawia v. U.S. Dept. of Labor,* 627 F.Supp.2d 137, 142 (S.D.N.Y.2009). Under the APA, a reviewing court may set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *41 North 73 West, Inc. v. U.S. Dep't of Transportation,* 408 Fed.Appx. 393, 399 (2d Cir.2010) ("the agency's 'nonfactual' findings, namely 'other agency findings, conclusions, and actions,' must be set aside by the reviewing court if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' ") (internal citation omitted). This deferential standard of review does not permit the Court to "substitute [its] judgment for that of the agency." *Nat'l Res. Def. Council v. FAA,* 564 F.3d 549, 555 (2d Cir.2009) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). "[E]ven a decision that is not perfectly clear" will be affirmed by the Court "provided the agency's path to its conclusion may reasonably be discerned." *Karpova v. Snow,* 497 F.3d 262, 268 (2d Cir.2007).

An agency's decision is arbitrary and capricious when the agency

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "The test here is primarily one of rationality. If the [agency] based its order on substantial relevant evidence, fairly ascertained, and if it has made no clear error of judgment, this court is not authorized to overturn that order." *Rockland County v. U.S. Nuclear Regulatory Comm'n,* 709 F.2d 766, 776 (2d Cir.1983) (citing *Cross–Sound Ferry Servs., Inc. v. U.S.,* 573 F.2d 725, 730 (2d Cir.1978)). The "arbitrary and capricious" standard of review is "highly deferential" and "narrow[,]" (*id.*), and a reviewing court may only review evidence produced in the administrative record. *See Overton Park,* 401 U.S. at 419, 91 S.Ct. 814.

While the Court will generally only look "to review the Secretary's order," sometimes doing so requires that the Court "determine whether ... [s]he was bound by the ALJ's findings of fact." *Castle Coal & Oil Co., Inc. v. Reich,* 55 F.3d 41, 44 (2d Cir.1995). Generally, the administrative agency wields greater discretion when reviewing the decision than does a court. But, because "[t]he [Administrative Review] Board is an essentially appellate agency," 29 C.F.R. § 7.1, *de novo* is not the proper standard of review "except upon a showing of extraordinary circumstances." (*Id.*) As a reviewing body, the ARB will typically adhere to a highly deferential standard of review of the ALJ's findings of fact.

### B. Administrative Review Board Final Decision and Order

Parties in the instant action disagree about the legality of the Final Decision

and Order, which was issued by the ARB on February 10, 2011, and reissued with amendments on March 1, 2011.[4]

Plaintiff argues that the ARB's decision was in excess of its jurisdiction insofar as it "set[ ] aside the ALJ's evidentiary and credibility findings without justification" because it "fail[ed] to comply with the ARB's [r]ules" and, therefore, is "unlawful under the Administrative Procedure Act . . . ." (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 2.) All of Plaintiff's arguments opposing the agency stem from one main contention: that the ARB "improperly acted as fact-finder and performed a *de novo* review of the evidence," which is clearly not permitted according to the agency regulations. (*Id.* at 8.) If the ARB "reverse[d] credibility findings" absent a showing of "clear error[,]" (*id.*), then the "practices and procedures utilized by the Department" are in violation of the law and should be vacated. (*Id.* at 7.)

The Government responds by arguing "that the ARB correctly found that Pythagoras's rebuttal evidence was legally insufficient . . . to negate the Administrator's showing . . . ." (Gov't Mem. of Law in Supp. of Mot. for Summ. J. at 20.) The threshold legal standard was not met, the Government further asserts, because Plaintiff's evidence was replete with "unreliable testimony and documents that described, only in very vague and general terms, the nature of the work done on the project . . . ." (*Id.*) According to this argument, the ARB was not undermining the ALJ's factual inquiry. Instead, the lack of specificity supports the ARB's finding of law, an assessment that must be resolved in order to proceed with a full review of the ALJ's determination.

Plaintiff rebuts that "the ARB . . . [never] even addressed burdens of production or persuasion in" its decision, and the Government's discussion of a *"first* ruling" is misplaced. (Pl.'s Reply Mem. Of Law in Further Supp. of Mot. for Summ. J. at 3.) The Court disagrees with the Plaintiff.

▮▮▮ Despite the fact that this matter was initially heard before an Administrative Law Judge and appealed to the agency, there are still trial court corollaries that guide an agency when it operates in a quasi-judicial capacity. One such corollary is that rebutting an inference for the plaintiff requires that "the defendant . . . meet its burden of production" i.e., "to introduce evidence which, taken as true, would permit" the negating of the inference. *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.1994). Questions regarding the sufficiency of evidence to establish or negate an inference are not simple, especially in an administrative agency proceeding where the trier of fact and the trier of law are the same person, and hearings are less formal than in a trial court. Before the ALJ gets to the *factual* determination of whether rebuttal evidence outweighs the evidence that established the inference in the adversary's favor, it must adjudge said rebuttal evidence *legally sufficient.* The ARB then considers factual findings with a high level of deference to the trier of fact, but will consider the threshold matter, i.e. the legal question, with less deference. The reviewing body, then, is empowered to find that the evidence is insufficient *as a matter of law* to rebut an inference, and the factual matter is never reached.

According to the record, Frank Lousidor, the general superintendent, was the

---

4.  It should be noted that the ARB's Final Decision and Order issued on February 10, 2011 is, with the exception of a few "numerical errors at pages 31 and 33" and the correc-

tion of a last name on page 34, "[i]n all . . . respects . . . the same" as the March 1, 2011 Final Decision and Order. (Admin.R. 6870–71.)

last manager to possess records of the work hours before the information was entered and send to payroll. Despite regulations requiring comprehensive recording-keeping, which demand that the employer preserve records that indicate "the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid[,] including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof ..., daily and weekly number of hours worked, deductions made and actual wages paid[,]" *see* 29 C.F.R. § 5.5(a)(3)(i), Plaintiff's records "merely listed the daily number of hours work ...." (Admin.R. 6408.) The record is replete with documentation of Lousidor's failure to do this, including his own admission. (*See, e.g., id.* at 6408, 6413, 6886.)

■ Here, Plaintiff contends that the ARB "improperly substituted its own credibility judgments for those of the ALJ in arriving at its determination[,]" thereby "exceeded[ing] its review authority." (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 2.) The ARB, however, affirmed the ALJ's finding regarding the Administrator's showing (i.e. that the Administrator demonstrated work was performed for which employees were not compensated). The ARB then took issue, not with the ALJ's credibility findings of the evidence, but with the sufficiency of the evidence offered by Plaintiff to rebut the inference. The ARB's Final Decision and Order ruled that the threshold legal standard had not been met, in this case because Pythagoras's evidence does not meet with "precision" the accounting for hours demanded by the law, i.e. it does not "account[ ] for the entire disputed claim". (Admin.R. 6894.) (*See id.*) (employer's rebuttal evidence does not "fully account[ ] for the work hours in question" pursuant to *Mt.*

*Clemens* ). The ARB ruled that "information pertaining to the amount of work performed is necessarily a strict standard, which may be met only with individualized documentation of who performed the work as well as the nature and amount of the work allegedly performed." (*Id.* at 6884.) In effect, the ARB determined that the ALJ failed to apply the proper legal standard in making its finding regarding the sufficiency of Plaintiff's evidence. And, sitting in review of the administrative body, this Court cannot say that the ARB was arbitrary or capricious in making that determination.

As the ARB noted, "[a]llowing a wage claim to be defeated by an equally contrary inference based on generalized records would remove the incentive for employers to keep precise records as required by the law." (*Id.* at 6894.) The Daily Look Aheads, documents created by Lousidor, were both prospective (i.e. not an indicator of what actually *was* done) and general (i.e. did not indicate the work to be done with specificity with regard to employee, types of laborer needed, number of hours, etc.). (*Id.* at 6888.) None of the evidence consisted of "individualized documentation of who performed the work as well as the nature and amount of the work allegedly performed," (*id.* at 6884), and, taken together, it hardly seems to reach the level of "substantial evidence." *Brink's, Inc. v. Herman,* 148 F.3d 175, 178 (2d Cir.1998). The ARB rightly determined that the evidence underlying the ALJ's finding of "adequa[cy] to rebut ..." was legally insufficient "[t]o rebut [Defendants'] evidence" because Plaintiff had not "produce[d] an accounting of hours worked by [its] employees." *Herman v. Hector I. Nieves Transp., Inc.,* 91 F.Supp.2d 435, 446–447 (D.P.R.2000) (citation omitted).

The Court must give deference to the conclusions of law made by the agency—here, the ARB—particularly as they represent the final determination of the Secretary. *See* 29 C.F.R. § 7.1(d) ("the [Administrative Review] Board shall act as the authorized representative of the Secretary of Labor. The Board shall act as fully and finally as might the Secretary of Labor concerning such matters.") "Th[e] highly deferential standard of review" to which the Court is bound, moreover, "is not altered merely because the Secretary disagrees with the ALJ," but the Court will " 'defer to the inferences that the Secretary derives from the evidence, not to those of the ALJ.' " *Varnadore v. Sec'y of Labor*, 141 F.3d 625, 630 (6th Cir.1998) (citations omitted).

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is DENIED, Defendants' Motion is GRANTED, and the Complaint is DISMISSED in its entirety with prejudice. The Clerk is directed to close the docket in the matter.

SO ORDERED.