NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0111n.06

No. 20-1529

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARTIN J. WALSH, Secretary of Labor, | ) | **FILED** |
| | ) | Mar 09, 2022 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TIMBERLINE SOUTH, LLC, a Michigan limited | ) | COURT FOR THE EASTERN |
| liability company; JIM PAYNE, an individual, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

Before:  SUTTON, Chief Judge; WHITE, and DONALD, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Defendants Timberline South, LLC, and its director, Jim Payne, return to this court for a second time appealing the district court's grant of summary judgment against them.  In the prior appeal, we affirmed the district court's liability determination but concluded that it erred in finding that ordinary commute time and bona fide meal periods qualify as compensable hours subject to the FLSA's overtime requirements.  We accordingly vacated the damages award.  On remand, the district court found that Defendants failed to establish the amount of commute and bona fide meal time included in their records and therefore reissued judgment in favor of the Secretary of Labor in the same amount as before.  On appeal, Defendants argue that the district court was required to reopen discovery or hold an evidentiary hearing on damages, that the district court erred by including commute and meal time in the damages award, and that the Secretary failed to meet his burden to prove damages because each

of the Secretary's calculations of overtime contained errors and inconsistences. Because there is a genuine dispute of material fact regarding hours-worked for some employees, we AFFIRM IN PART and REVERSE IN PART and REMAND for further proceedings.

**I.**

We previously set forth the background of this case and explained, as relevant here, the numerous rounds of briefing on damages. *See Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838 (6th Cir. 2019) (*Timberline I*). To recap, three rounds of briefing occurred before the district court first granted summary judgment in favor of the Secretary on damages. Wage and Hour Investigator Jeffrey Wrona of the Department of Labor (DOL) estimated in the Secretary's original summary judgment briefing that Timberline owed unpaid overtime of $468,595.08 for fifty employees. Wrona explained that he primarily relied on Timberline's payroll records to compute unpaid overtime. However, because Timberline lacked records for the number of hours worked by some employees, Wrona had to "reconstruct the hours worked per week based upon employee interviews" or other methods for those employees. R. 18-17, PID 1738-39. Defendants argued, in part, that the Portal-to-Portal Act of 1947, 29 U.S.C. § 254(a), required a reduction for time spent on meals and in traveling from the employees' homes to their workplaces, for which the employees were compensated. Defendants also submitted their own estimate of overtime owed (assuming the applicability of numerous exemptions and deductions later found not to apply), estimating unpaid overtime of $11,199.26. After the original summary judgment briefing, the district court rejected Defendants' argument that the Portal-to-Portal Act prohibited inclusion of ordinary commute time and bona fide meal periods in the amount owed because Defendants had an established custom or practice of compensating for such time.

The district court, however, ordered supplemental briefing to clarify whether Wrona relied on employee interviews for the calculation of overtime due for hourly employees. And with respect to non-hourly employees, the district court ordered supplemental briefing to clarify inconsistencies in the record and to provide requested information in a specific format.

In the Secretary's first supplemental brief, he calculated revised unpaid overtime to be $454,684.73 for the fifty employees. The Secretary explained that forty-three out of the fifty employees were paid an hourly rate for their entire employment, and because Defendants kept records of their hours worked, "[c]omputing overtime for these employees is a simple case of arithmetic based upon Defendants' own records." R.38, PID 3725-26. The Secretary further explained that he

> computed back wages for the remaining 7 employees for whom Defendants failed to keep some or all time records by either: (1) averaging the number of hours similarly situated employees worked per week or (2) averaging the number of hours individual employees worked each workweek based upon time records previously kept for each employee prior to Defendants changing the employee compensation to non-hourly and ceased keeping the required records.

*Id.* at PID 3726. The Secretary also presented data showing how he arrived at the calculated unpaid overtime.

Defendants countered, in part, that the calculations performed by the Secretary for the non-hourly employees lacked credibility because the calculations guessed at hours worked and pay rate, contained errors, and led to absurd results because Defendants presented evidence that their employees were paid significantly more than the industry average. Defendants submitted timecards from seven employees that showed discrepancies between the hours listed in the timecards and the hours-worked data used by the Secretary, which was taken from Defendants' payroll journals. And they filed affidavits from five employees wherein each one stated that he "was paid for driving to and from the worksite, but [he] did not have an agreement or understanding

that this time would be included in any calculation of overtime"; that "[o]n most days," the employee "drove about one hour to the jobsite, and one hour home, and took a half-hour lunch when [he] could fit it in"; and that the employee included "drive time and lunch time in total hours."  R. 41-12, PID 4167-71.

The district court noted certain discrepancies that required additional briefing but also rejected Defendants' arguments that the data was inflated and that industry-aggregate data should be used instead.  The district court further noted that Defendants were critiquing the Secretary's "methodology largely by cherry picking particular workweeks with unusually high gross wages or unusually low gross wages" and were essentially attacking "the statistical concept of an average."  R. 43, PID 4187–88.  As to the timecards, the district court reasoned that the Secretary was not at fault for relying on the payroll journals rather than the timecards.

In the Secretary's second supplemental brief, he recalculated unpaid overtime to be $445,533.49, which reflected a change of unpaid overtime for three non-hourly employees and one hourly employee.  Defendants responded by arguing that the Secretary's third attempt still contained errors, which they said evidenced a total lack of credibility in the Secretary's calculations, and thus the district court should award no damages or use the industry-aggregate data to determine unpaid overtime.  Defendants further noted that the Secretary claimed to make adjustments to four employees totaling $9151.31, yet the difference in damages between the second brief and third brief ($9115.24) did not match that amount, resulting in a disparity of $36.07.  Defendants also argued that one employee's computation sheet still contained nine

overlapping entries. Finally, Defendants reasserted their argument that the award should be reduced due to their compensating employees for commute and meal time.

The district court made reductions to the Secretary's claimed unpaid overtime and granted summary judgment to the Secretary on damages. The district court discounted $6060 to account for the duplicative entries that Defendants noted and the $36.07 that represented another disparity in the Secretary's calculations. The district court further explained that Defendants attached a table to their second supplemental brief and an alternative payroll journal that they said accurately recorded hourly totals in their employees' timecards and showed a discrepancy with some of the data that the Secretary used from the payroll journals. But the district court rejected Defendants' argument that this data should have been used instead:

> It is unclear when, if at all, these documents were produced to the Plaintiff, nor is it apparent where these documents can be found in the evidentiary record (other than the attachment to Defendants' current supplemental brief). Even assuming these documents were produced at some point in these proceedings prior to the instant briefing, this still does not entitle Defendants to any reduction as to these 7 workweeks. Plaintiff is still not at fault for relying on the data produced by Defendants which Defendants represented to be accurate. Defendants cannot now contend that those records were inaccurate, and Plaintiff should have instead relied on other (accurate) data that covered the same time periods in question.

R. 46, PID 4398-99. Finally, the district court rejected Defendants' argument that it should rely on industry-aggregate data and that the award should be reduced due to compensation for commute or meal time. Accordingly, the district court awarded damages for unpaid overtime of $439,437.42, and an equal amount in liquidated damages.

On appeal, we found that the district court erred in concluding that home-to-work and work-to-home commute time and bona fide meal periods[1] are considered "work" under the FLSA

---

[1] For a meal period to be considered "bona fide," "[t]he employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period." 29 C.F.R. § 785.19.

that are subject to its overtime-compensation provisions where the employer has a custom or policy of paying for such time. *Timberline I*, 925 F.3d at 855. Accordingly, we vacated the district court's damages determination and remanded to consider the amount of ordinary commute and bona fide meal time that can be established, noting that the Secretary had raised alternative bases for affirmance to the district court that he had not briefed on appeal. *Id.* & *id.* n.12. We also rejected Defendants' argument that use of industry-aggregate data is appropriate to use to determine damages in this case. *Id.* at 855–56. We otherwise declined to address the remaining damages arguments that were presented. *Id.* at 855.[2]

On remand, the district court ordered the parties to file supplemental briefs not exceeding three pages "explaining their perspective on the remaining issues after remand and the necessary steps to resolve the remaining concerns." R. 65, PID 4558. Defendants argued that the district court was required to reopen discovery to determine the amount of non-compensable hours included in the Secretary's damages calculations. Without additional discovery, Defendants claimed, the damages portion of the case must be dismissed because it lacked an evidentiary basis. The Secretary argued that Defendants did not meet their burden to negate the reasonableness of his damages calculations after several previous rounds of briefing and that nothing in our prior opinion required reopening the record.

The district court agreed with the Secretary. It reasoned that the parties had already briefed cross-motions for summary judgment (where commute and meal time were at issue) and then further briefed damages through two rounds of supplemental briefing, and therefore additional discovery was unlikely to result in new evidence. And it found that Defendants failed to offer any

---

[2] We further determined that Defendants were liable for liquidated damages in an amount equal to unpaid overtime compensation, but vacated the amount awarded "because the amount of unpaid overtime compensation owed may change after further proceedings." *Timberline I*, 925 F.3d at 857.

evidence to establish the time its employees were paid for bona fide meal periods or ordinary commute time. Therefore, it concluded that Defendants failed to negate the reasonableness of the Secretary's calculations and granted judgment in favor of the Secretary in the amount of $439,437.42, the same amount as before. Consistent with *Timberline I*, it also awarded an equal amount in liquidated damages.

Defendants appeal.

## II.

We review "de novo a grant of summary judgment, viewing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *Timberline I*, 925 F.3d at 843 (citing *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 345 (6th Cir. 2018)). The district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

Defendants first argue that our prior opinion required the district court to reopen discovery or hold an evidentiary hearing to determine damages. On remand, "the trial court must proceed in accordance with the mandate and the law of the case as established on appeal" and "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Mason v. Mitchell*, 729 F.3d 545, 550 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004)).

We previously vacated the district court's judgment on damages because

> the district court determined that ordinary commute time and meal time that was
> included in Defendants' records qualified as compensable hours under the FLSA

> and, therefore, the court did not determine, and the Secretary did not calculate, the amount of ordinary commute time and bona fide meal time included in the records used to calculate unpaid overtime. This was error. Any ordinary commute and bona fide meal time that can be established must not be included in determining how many hours of overtime each employee worked . . . .

925 F. 3d at 855. In a footnote, we noted that the Secretary had made additional arguments to the district court that either the district court did not address, or the Secretary did not brief on appeal, which could be "alternative bases for affirmance." *Id.* at 855 n.12. These additional arguments included

> that even if Defendants' employees' travel time and lunch breaks were included in the recorded hours, Defendants did not meet their burden to negate the reasonableness of the Secretary's damages computations, that there was an agreement to treat these hours as hours worked, and that Defendants did not establish that the travel time did not constitute work time or that their employees received bona fide meal breaks.

*Id.* On remand, the district court determined that, after three rounds of briefing, Defendants had been "unable to provide evidence regarding the amount of time their employees spent commuting or eating meals," R. 68, PID 4577, and held that "Plaintiff made a reasonable estimation of total hours worked and Defendants failed to meet their burden to negate the reasonableness of Plaintiff's calculations," *id.* at PID 4578.

Defendants appear to assume that we determined that ordinary commute time and bona fide meal periods were included in the Secretary's calculations, and therefore some form of deduction was required. Our analysis, however, was limited to rejecting the district court's rationale for concluding that it was irrelevant whether this time was included in the calculations. And we expressly noted that the Secretary had raised alternative bases for affirmance, which we declined to address. Accordingly, putting aside for the moment whether the district court's

conclusion is correct, the district court complied with the letter and spirit of the mandate in its approach after remand.[3]

**B.**

Defendants next argue that the district court erred in granting summary judgment on damages by misapplying the burden-shifting framework under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), and improperly discounting employee affidavits stating that those employees regularly included commute and meal time in their time records.

> Under *Mt. Clemens*, an
>
> FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he [or she] was not properly compensated. To determine the extent of damages, the plaintiff can prove his or her under-compensation damages through discovery and analysis of the employer's code-mandated records. However, if the employer kept inaccurate or inadequate records, the plaintiff's *burden of proof is relaxed*, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate.

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) (alterations in original) (internal quotation marks and citations omitted), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).  Thus, an "FLSA plaintiff does not need to prove every minute of uncompensated work. Rather, she can estimate her damages, shifting the burden to the employer. If the employer cannot negate the estimate, then the 'court may award damages to the

---

[3] Defendants cite one case for the proposition that discovery was required on remand.  In that case, however, the court noted that it reviews the district court's refusal to reopen the record for an abuse of discretion, and found an abuse of discretion because "very little record has been made concerning the [relevant issue]."  *Yashon v. Gregory*, 737 F.2d 547, 556 (6th Cir. 1984).  Here, however, as the district court noted, the parties were given three opportunities to brief damages, and Defendants have not pointed to additional evidence they could obtain through discovery to rebut the Secretary's calculations.  *See Himes v. United States*, 645 F.3d 771, 783 (6th Cir. 2011) (rejecting argument that district court erred in limiting discovery because the plaintiffs did not show "how [further] discovery would rebut the movant's showing of the absence of a genuine issue of material fact." (alteration in original) (internal quotation marks and citation omitted)).

employee, even though the result be only approximate.'" *Id.* at 602-03 (quoting *Mt. Clemens*, 328 U.S. at 688).

Regarding ordinary commute and bona fide meal time, Defendants argue that "Plaintiff made no attempt whatsoever to account for commute time and meal time which was known to be included in the total hours reported. In the absence of adequate records, the Plaintiff could have estimated the amount of commute time and meal time and made appropriate deductions." Appellants' Br. at 21. For hourly employees—comprising forty-three of the fifty employees at issue—the Secretary relied on Defendants' payroll records, which supplied the necessary information to determine unpaid overtime. Because the FLSA requires employers to keep records of the "wages, hours, and other conditions and practices" of its employees, 29 U.S.C. § 211(c), an employee "easily discharge[s] his burden by securing the production of those records," *Mt. Clemens*, 328 U.S. at 687. And except as discussed below regarding employees who submitted affidavits, Defendants did not put forth evidence to call into question the reasonableness of relying on these records. Defendants' argument that the Secretary did not meet his initial burden to establish damages because he did not deduct commute and meal time is therefore unpersuasive. The Secretary put forth a reasonable estimate based on Defendants' records, records that did not show employees were compensated for such time.

Defendants also argue that even if the district court is correct that the Secretary met his initial burden to estimate damages, the district court erred in determining that Defendants did not come forward with sufficient evidence to rebut that estimate by applying an impossible standard for Defendants to meet, essentially requiring Defendants to rebut the inference with payroll records. As Defendants persuasively argue, because application of *Mt. Clemens* necessarily means that the employer did not keep adequate records, requiring the employer to come forward with

adequate records detailing the precise amount of compensable work performed means the employer would never meet its burden.

However, with the exception of three hourly employees, discussed below, there was insufficient evidence from which to estimate with any degree of precision the number of hours of home-to-work or work-to-home commute time or bona fide meal periods hourly employees included in their time records. Defendants point out, in a footnote in their reply brief, that they submitted a summary of recalculated overtime with their motion for summary judgment, which applied exemptions (later found not to apply and not at issue in this appeal), credited fuel and phone compensation (found to be inappropriate and not at issue in this appeal), and deducted drive time and lunch time from total hours for non-exempt employees, resulting in total unpaid overtime of $11,199.26. We agree with the district court, however, that there is insufficient evidence to find that these deductions for commute and meal time rebut the reasonableness of the Secretary's calculations. Although Payne asserted that employees were compensated for drive-to-work time and lunch time, Payne testified that he had no way to know how many commute or meal hours were included in employees' payroll records; did not know whether employees took bona fide meal breaks; stated that "drive-to-work compensation is when they typically either leave their house or get close to Gaylord[,] they start their time, they fuel up, go get whatever they get to get ready to go to the job, and then they drive to the job"; and acknowledged that employees would often stop for fuel for Timberline's machines during their trips to the jobsite. R. 25-4, PID 2673-2702. The Secretary provided affidavits from employees saying they did not include that time in their timesheets. This was consistent with the notation on the timecards instructing employees to record "drive time to the job FROM THE SHOP." R. 25-7, PID 2715.

Thus, as it pertains to commute and meal time, to the extent that Defendants' payroll records were inaccurate or inadequate, even accepting Payne's testimony, the district court did not err in concluding that the Secretary's reliance on the payroll records met his initial burden to reasonably estimate damages, and Defendants failed "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88; *see Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1065 (6th Cir. 2019) ("And more importantly, to the extent that the DOL's calculation provides only a rough estimate of the back wages owed to [an employee], that imprecision is a result of [the employer's] failure to keep accurate and complete records."); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 407 (6th Cir. 2017) ("Plaintiffs have the initial burden to make the . . . damages showing . . . ; once made, the burden shifts to defendants to prove the precise amount of work performed or otherwise rebut the reasonably inferred damages amount. If defendants fail to carry this burden, the court may award the reasonably inferred, though perhaps approximate, damages." (citation omitted)).

For the remaining seven employees, due to inadequate records, the Secretary estimated hours worked by using either average hours from similarly situated employees, or, for three employees who at some point were hourly employees, using average hours from when they were hourly employees. *See Timberline I*, 925 F.3d at 852. The Secretary's approach was reasonable considering the available data, and Defendants do not argue otherwise. *See Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 366 (6th Cir. 2019) (approving estimated hours and wages for years with no records where the Secretary used wage and hour data from other years where records were kept). As we previously explained, Defendants' proposed approach of using industry-aggregate data is inappropriate and therefore failed to rebut the Secretary's reasonable estimate. *Timberline I*,

925 F.3d 855-56; *see also Min & Kim*, 919 F.3d at 364 (rejecting the employer's argument that its hourly rates "are generous by industry standards" as "neither here nor there"). And, with the exception of two employees, discussed below, Defendants failed to introduce evidence that would allow a finder of fact to conclude with any precision the amount of commute or bona fide meal time included in the Secretary's estimates.

However, Defendants submitted similar affidavits from five employees—three hourly employees (equipment operators Keyser, Kitchen, and Ogden) and two equipment operators who were paid hourly and then non-hourly (Axford and Gary Payne). Those employees swore in their affidavits that "[o]n most days [they] drove about one hour to the jobsite, and one hour home, and took a half-hour lunch when [they] could fit it in"; and that they included their "drive time and lunch time in total hours" when they reported their time. R. 41-12, PID 4167-71. The affidavits do not purport to describe how other employees recorded their time, and refer only to the individual affiants.[4] The district court initially found these affidavits irrelevant because it concluded that commute and meal time was compensable under the FLSA as a custom or practice of Defendants to pay for this time. On remand after we reversed that determination, the district court concluded that the affidavits are "simply inadequate to demonstrate how much time each employee spent on those activities in order to exclude that time from the calculation." R. 68, PID 4577.

The Secretary echoes the district court's reasoning, arguing that the affidavits provide only "vague generalizations" about what those individuals did on "most days" or "when they could fit it in." Appellee's Br. at 43. The Secretary argues that this evidence is insufficient for Defendants to meet their burden under *Mt. Clemens*. In support, the Secretary first relies on *Pythagoras*

---

[4] Therefore, Defendants' argument that these affidavits support finding a company-wide practice of including ordinary commute and bona fide meal time in the time records is unsupported.

*General Contracting Corp. v. United States Department of Labor*, 926 F. Supp. 2d 490, 492 (S.D.N.Y. 2013), which involved an administrative proceeding brought by DOL against an employer for violating similar record-keeping and overtime provisions of the Davis-Bacon Act, the Davis-Bacon labor standards provisions of the U.S. Housing Act of 1937, and the Contract Work Hours and Safety Standards Act. The ALJ found after a hearing that the employer had presented sufficient evidence to negate the reasonableness of DOL's damages calculation. *Id.* at 493-94. The Administrative Review Board (ARB) rejected the ALJ's reasoning and concluded that the generalized records offered by the employer were insufficient as a matter of law to rebut DOL's reasonable damages calculations because they were not based on individualized records and did not fully account for the work hours in question. *Id.* 495-96. The employer sought review from the district court in the Southern District of New York, which upheld the ARB's determination as not arbitrary or capricious. *Id.* at 497-99. Given the difference in evidence offered by the employer to rebut the reasonableness of the damages estimate and the standard of review by the out-of-circuit district court, *Pythagoras* is not persuasive.

The Secretary also relies on several of this court's cases as supporting his argument that Defendants failed to rebut his reasonable estimate of damages. In *Min & Kim*, however, the employer did "not offer[] any evidence to rebut the investigator's reasonable calculations" of unpaid overtime, which were based on the employer's own records. 919 F.3d at 366. In *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009) (per curiam), this court affirmed the district court's refusal to allow the employer to claim credit for meals and lodging because the employer failed to produce contemporary records reflecting meal credits or the value of housing. The court did not purport to apply *Mt. Clemens*'s burden-shifting framework in doing so. *Id.* In *Bueno v. Mattner*, 829 F.2d 1380, 1387 (6th Cir. 1987), this court affirmed the district court's decision

finding after a trial that the plaintiffs met their burden of proof to establish the hours they worked based on their testimony and worksheets, and that the employer "had failed to produce other evidence rebutting this conclusion or indicating the exact hours worked." The court therefore affirmed the district court's conclusion as not clearly erroneous. *Id.* Given the different facts and issues addressed or legal standard applied, none of these cases are particularly helpful.

The Secretary further relies on cases rejecting the plaintiff's general testimony that he worked more than forty hours per week as too "equivocal, conclusory, and lacking in relevant detail" to survive summary judgment. *Viet v. Le*, 951 F.3d 818, 824 (6th Cir. 2020). The Secretary analogizes the employees' affidavits in this case to the similar testimony in *Viet*. *Viet*, however, addressed the threshold question of liability, i.e., whether the employee presented sufficient evidence that he worked more than forty hours per week such that the employer failed to pay the required overtime rate for hours in excess of forty. *See id.* at 822. Here, the parties are beyond that initial question and are instead in the realm of reasonable estimates under *Mt. Clemens*.

As the Secretary points out, the employee affidavits are somewhat vague regarding the number of commute or meal hours included in the employees' time records, and they do not specify whether the employees were completely relieved of their duties during the commute and meal times recorded in their time entries such that the commute time was "ordinary," 29 C.F.R. § 785.34 (citing *id.* § 785.35), or the meal periods were "bona fide," *id.* § 785.19(a). However, at this stage of the proceedings, viewing the evidence in the light most favorable to Defendants and drawing all reasonable inferences in their favor, there is a genuine dispute of material fact on these questions. These affidavits, after all, were submitted by employees whose overtime hours are in dispute and who would be entitled to any unpaid overtime compensation. Given that these employees suggest that a potentially significant amount of time was included in their time records

that is not compensable under the FLSA, we conclude that there is a question of fact whether the Secretary's estimate is reasonable because he did not attempt to account for this time.

Accordingly, we reverse the grant of summary judgment on damages as to these five employees due to questions of fact regarding the number of hours of ordinary commute time and bona fide meal periods were included in the payroll records.

## C.

Last, Defendants argue that the Secretary failed to meet his burden of proof to establish damages because the Secretary's calculations purportedly contained errors in arithmetic and did not match Defendants' payroll records. As a result, Defendants argue, there remains a genuine dispute of material fact about damages.

In support of their argument that the Secretary's calculations were overstated in some instances, Defendants point to eight discrepancies between the timecards and the payroll journals used by the Secretary. Seven of those instances reflect that the employee's timecard listed fewer hours than used by the Secretary, which would result in less unpaid-overtime liability; and in one instance, the timecard reflects that an employee worked forty hours in a week where the Secretary listed zero hours worked, which would not impact unpaid-overtime liability. The timecards showing the discrepancies with the payroll journals used by the Secretary were attached to Defendants' first supplemental brief. The district court determined that these discrepancies did not matter even though "it appear[ed] that Defendants may have incorrectly incorporated the information from the employee timecards into the payroll journals in some cases" because "Plaintiff is not at fault for any error in Defendants' payroll journals" and "Defendants have not identified a discrepancy between the payroll journals and the Plaintiff's computation sheets." R. 43, PID 4184. The district court further noted that "in some cases the hours from the employee

time cards would have resulted in overtime liability higher than Plaintiff's calculation reflects. In one of the examples identified by Defendants (Mike Lube's workweek ending August 7, 2015), Plaintiff's computation sheet reflects zero hours worked whereas the employee time card reflects 40 hours worked." *Id.*

The district court's reasoning is unpersuasive, especially because it appeared to conclude that the timecards were more likely accurate. At summary judgment, where the evidence is viewed in the light most favorable to Defendants and all reasonable inferences are drawn in their favor, the district court, once the evidence was pointed out to it, should not have discounted that evidence merely because Defendants appeared to have incorporated that evidence into their payroll journals incorrectly. Further, in the one instance where the timecards reflected more hours worked than listed by the Secretary, the difference was immaterial because it did not result in an underpayment of overtime liability. Thus, the district court's apparent reasoning that the errors probably evened out in the end is inconsistent with the evidence.

Although, as the Secretary argues, we have explained that "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept [accurate] records in accordance with the requirements of [the FLSA]" *Monroe*, 860 F.3d at 404 (citation omitted), we decline to apply this rule where Defendants maintained all of the information for the weeks and employees in question but apparently made an inadvertent error in transferring the data from timecards to payroll journals. Further, even if the Secretary's initial calculations were reasonable in light of this discrepancy, Defendants' evidence showing with precision the exact amount of hours worked for those seven weeks satisfies their burden under *Mt. Clemens* to survive summary judgment as to these discrepancies.

If the timecard data is used instead, it results in only a 79.5-hour difference from the total calculated by the Secretary, a tiny disparity relative to the total damages award. Defendants argue that the fact that they found these and other discrepancies, and because the Secretary purportedly misread the payroll journals, means that the Secretary's entire damages calculation is unreliable.[5] Defendants' broader argument is unavailing. Contrary to their argument, the Secretary did not misread the payroll journals. The data used by the Secretary matches the payroll journals provided by Defendants. As the district court explained, Defendants later pointed to a different payroll journal that apparently matched most of the timecards for the seven disputed weeks, but it is unclear whether that alternate payroll journal was produced to the Secretary.

Regardless, the Secretary calculated hours worked for fifty employees over a four-year period. Defendants did not offer a statistical analysis extrapolating a sampling error rate across the full data set. And Defendants cite no authority for holding that a handful of errors for such a large dataset renders the whole analysis unreliable or creates a genuine dispute of material fact as to the entire analysis. The district court addressed each of the objections raised and required the Secretary to address the errors or gave Defendants the benefit of the doubt. Aside from the seven weeks where the payroll journals showed more hours worked than the employee timecards, Defendants have not presented a genuine dispute of material fact on damages as a result of any purported errors by the Secretary.

**III.**

There are genuine disputes of material fact regarding damages as pertains to the seven weeks where Defendants noted that the employee's timecards reflected fewer overtime hours

---

[5] As noted above, Defendants or the district court identified several errors and discrepancies in the multiple rounds of briefing on damages.

worked as compared to the payroll journals relied on by the Secretary,[6] and also regarding the five employees who claimed to record ordinary commute time and bona fide meal periods in their time records.  We therefore AFFIRM IN PART and REVERSE IN PART and REMAND for further proceedings.

---

[6] Those weeks are Barton Briley, week ending 8/9/2015; Briley, 7/5/2015; Pat Cobb, 8/2/2015; Ron Jacobs, 7/26/2015; Ed Welsh, 7/5/2015; Gary Nadell, 8/9/2015; and R. Newberry, 8/16/2015.